AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
for the
Western District of New York



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Black and Silver Motorola MetroPCS cellular telephone (Subject Phone 1)

Case No. 19-MJ-52

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See **Attachment A**, attached hereto and incorporated herein by reference.

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See **Attachment B**, attached hereto and incorporated herein by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. § 841(a)(1); 846; and 856; and 18 U.S.C. § 924(c) and 1111.

The application is based on these facts:
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

THOMAS J. WEBB
SPECIAL AGENT
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 5, 2019

*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge
*Printed name and Title*

City and state: Buffalo, New York

## Attachment A

## Property to be Searched

Black and Silver Motorola MetroPCS cellular telephone (Subject Phone 1)



## Attachment B

### Schedule of Items to be Searched For and Seized

1. All records on the devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1), 846, 856 and 858:

    a. lists of co-conspirators, counterparties, and customers, and related identifying information;

    b. telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

    c. SMS and MMS messages, and any other wire and electronic communications relating to controlled substances and virtual currency;

    d. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    f. All bank records, checks, credit card bills, account information, and other financial records;

2. Evidence of user attribution showing who used or owned the devices described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# AFFIDAVIT

STATE OF NEW YORK   )
COUNTY OF ERIE      )   SS:
CITY OF BUFFALO     )

I, **THOMAS J. WEBB**, being duly sworn, depose and state:

1. I am employed as a Special Agent ("SA") for the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), Immigration and Customs Enforcement ("ICE"), since August 2007. I am currently assigned to the HSI Border Enforcement Security Taskforce (BEST), which investigates drug trafficking and money laundering organizations that operate in the United States and foreign countries with a nexus to the United States. As such, I am an investigator or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. Furthermore, per the Interagency Cooperation Agreement between the Drug Enforcement Administration ("DEA") and ICE/HSI, I am a cross designated agent authorized to investigate violations of Title 21, United States Code.

2. During my law enforcement career, I have participated in numerous cases involving the distribution of narcotics. I have participated in successful investigations into illicit drug distribution networks. I am familiar with how controlled substances are obtained,

diluted, packaged, distributed, sold and used within the framework of drug trafficking and how drug traffickers use their persons and personal property to facilitate their illegal activities.

3.      Your Affiant states that this investigation was conducted by Special Agents and Officers with HSI BEST, the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and the Erie County Sheriff's Office ("ECSO") (hereinafter, "the investigative team").  Your Affiant is fully familiar with the facts and circumstances of this investigation, such familiarity having been gained through:  your Affiant's personal knowledge based upon your Affiant's participation in this investigation as well as reports and information received from other law enforcement officers and agencies.

4.      This affidavit is made in support of a federal search warrant application for the following cellular phones recovered during the arrest of **BILLY D. HENDERSON**: One (1) Black and Silver Motorola MetroPCS cellular telephone (**Subject Phone 1**), which is more particularly described in Attachment A, attached hereto and incorporated herein by reference.

5.      As it is my purpose to obtain a search warrant for which only probable cause is required, I have not included each and every fact learned during the investigation to date.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that **Subject Phone 1**, described above, is evidence of, was used in committing, and/or contain evidence/fruits/instrumentalities of violations of: 21 U.S.C. § 841(a)(1) (possession with the intent to distribute, and to distribute, a controlled substance); 21 U.S.C. § 856 (maintaining a drug-involved premises); 21 U.S.C. § 858 (manufacture controlled substances

creating a substantial risk of harm to human life); and 21 U.S.C. § 846 (narcotics conspiracy) (hereinafter, "Enumerated Offenses").

6. The information contained in this affidavit is based upon my participation and upon reports and information received from other law enforcement officers and agencies. This affidavit is provided for the limited purposes of establishing probable cause to support the attached search warrant application and therefore does not contain each and every detail of the investigation.

## PROBABLE CAUSE

7. On April 3, 2019, at approximately 4:30 p.m., members of the Erie County Sheriff's Office (ECSO) Narcotics Squad, Buffalo Police Department (BPD) Narcotics Squad, and BPD Intelligence Squad executed a search warrant at 50 Newton St., Buffalo, NY, which is a single-family residence. The search warrant was obtained by the ECSO, and was signed by Erie County Court Judge Kenneth F. Case. It authorized law enforcement to search the residence for evidence of narcotics trafficking, including evidence of the distribution of fentanyl, a Schedule II controlled substance. The search warrant was initially executed by the ECSO SWAT Team. Both a front and rear security door were breached by the SWAT Team, and **BILLY HENDERSON** was observed in the back hallway attempting to flee the residence through the rear door. Additionally, located inside the residence were **DENISE PORTER** and **PORTER's** 12-year-old son.

8. The search warrant resulted in the discovery and seizure of a large quantity of suspected fentanyl (believed to be more than 100 grams). The following items were seized

3

inside the residence: (1) a quantity of suspected fentanyl and a digital scale with narcotics residue, located on a table in a rear living room (easily accessed by **PORTER's** minor son); (2) a digital scale with drug residue, located on the kitchen table; (3) mail and paperwork addressed to **HENDERSON** and **PORTER** at 50 Newton Street, Buffalo, NY; (4) a drug press, located on the staircase leading to the second floor; (5) approximately $7,000 in United States currency; (6) a box containing .357 ammunition, located on a nightstand in the back bedroom; (7) a 9 mm round of ammunition, located in the living room; (8) packaging material for narcotics distribution and a heat sealer; (9) Black and Silver Motorola MetroPCS cellular telephone, located on the kitchen table. In addition, two smaller bags of fentanyl were located outside the residence of 50 Newton Street, near 48 Newton Street. The two smaller bags appeared to have been thrown from the open bedroom window at the rear of 50 Newton Street.

9.      Although a presumptive field test of the suspected fentanyl was not done, based on my training and experience in fentanyl-related cases, my discussions with members of the ECSO, and my review of the photographs taken of the evidence seized during the execution of the search warrant, your affiant has probable cause to believe the evidence found inside and outside of 50 Newton constitutes a Schedule I or Schedule II controlled substance, as defined by the Controlled Substances Act of 1970, as amended, 21 U.S.C. § 801 et seq. The decision not to conduct such a test is due to the significant threat to law enforcement personnel, first responders, and members of the public by fentanyl, fentanyl-related substances, synthetic opioids, and other powder, which may be composed in full, or in part, of one of these aforementioned substances. Only trained personnel, in a lab environment, with necessary personal protective equipment (PPE), should be conducting such tests, and

they should be conducted in a controlled, safe environment. Conducting tests in an uncontrolled environment and without proper PPE, poses an undue risk and could result in serious bodily injury or death to those unknowingly exposed to fentanyl, fentanyl-related substances, or synthetic opioids.

## SUMMARY OF RELEVANT TECHNOLOGY

10.  A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells", enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

11.  In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books," sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on your Affiant's training and experience, and the information learned throughout this investigation, it is known that persons associated with drug trafficking organizations in general utilize the cellular telephones to communicate with others about the

5

possession, transportation, and distribution of controlled substances, including heroin, fentanyl, and other synthetic opioids.

13. Based on my training, my experience, my participation in other narcotics investigations, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned that significant narcotics traffickers such as dealers in fentanyl, other opioids, and other controlled substances frequently maintain, in portable mobile communication and storage devices, addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers, and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones, as well as bank and other financial records.

14. Based on your Affiant's experience, it is believed **Subject Phone 1** is evidence of and/or contain evidence of the Enumerated Offenses, which have been committed. I submit there is probable cause to believe that **HENDERSON** utilized these cellular devices to contact other suppliers, customers, or co-conspirators regarding the sale of cocaine. As such, I believe that the Subject Property described above contains evidence of the Enumerated Offenses, which have been committed by **HENDERSON** and others.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. There is probable cause to believe that things that were once stored on Laptop 1 may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging

7

files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

        d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

        17.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each of the Target Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Devices because:

        a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

        b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the Target Devices consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by each of the warrants.

19.    *Manner of execution.* Because each warrant seeks only permission to examine a device already in law enforcement's possession, the execution of each warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**WHEREFORE**, based upon the foregoing, your Affiant submits that there is probable cause for search warrant for Subject Phone 1 authorizing the examination of the device described in Attachment A to search for and seize the items described in Attachment B.

THOMAS J. WEBB
Special Agent
Homeland Security Investigations

Sworn to before me

this 5TH day of April, 2019

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

10

## Attachment A

## Property to be Searched

Black and Silver Motorola MetroPCS cellular telephone (Subject Phone 1)



## Attachment B

### Schedule of Items to be Searched For and Seized

1. All records on the devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1), 846, 856 and 858:

    a. lists of co-conspirators, counterparties, and customers, and related identifying information;

    b. telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

    c. SMS and MMS messages, and any other wire and electronic communications relating to controlled substances and virtual currency;

    d. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    f. All bank records, checks, credit card bills, account information, and other financial records;

2. Evidence of user attribution showing who used or owned the devices described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.